# Exhibit A

E-FILED; Prince George's Circuit Court
Docket: 5/21/2025 3:54 PM; Submission: 5/21/2025 3:54 PM
Envelope: 21304389

IN THE CIRCUIT COURT FOR Prince George's County
_(City/County)_

## CIVIL – NON-DOMESTIC CASE INFORMATION SHEET

### DIRECTIONS

**Plaintiff:** This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Justice of the Supreme Court of Maryland pursuant to Rule 2-111(a). RS

**Defendant:** You must file an Information Report as required by Rule 2-323(h).

***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

**FORM FILED BY:** ☒ PLAINTIFF ☐ DEFENDANT        **CASE NUMBER** C-16-CV-25-002783
                                                                    (Clerk to insert)

**CASE NAME:** Jane Doe CP    vs.    Jehovah's Witnesses Governing Body, et al.

**PARTY'S NAME:** Jane Doe CP    Plaintiff        **PHONE:** ____ Defendant

**PARTY'S ADDRESS:** 300 East Lombard Street, Suite 1100, Baltimore, MD 21202

**PARTY'S E-MAIL:** ____

**If represented by an attorney:**

**PARTY'S ATTORNEY'S NAME:** Catherine A. Dickinson        **PHONE:** 410-685-2022

**PARTY'S ATTORNEY'S ADDRESS:** 300 East Lombard Street, Suite 1100, Baltimore, MD 21202

**PARTY'S ATTORNEY'S E-MAIL:** cdickinson@sbwdlaw.com

**JURY DEMAND?** ☒ Yes ☐ No

**RELATED CASE PENDING?** ☐ Yes ☒ No  If yes, Case #(s), if known: ____

**ANTICIPATED LENGTH OF TRIAL?:** ____ hours  5  days

### PLEADING TYPE

**New Case:** ☒ Original        ☐ Administrative Appeal        ☐ Appeal
**Existing Case:** ☐ Post-Judgment        ☐ Amendment
***If filing in an existing case,*** skip Case Category/ Subcategory section – go to Relief section.

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
☐ Asbestos
☐ Assault and Battery
☐ Business and Commercial
☐ Conspiracy
☐ Conversion
☐ Defamation
☐ False Arrest/Imprisonment
☐ Fraud
☐ Lead Paint – DOB of Youngest Plt:____
☐ Loss of Consortium
☐ Malicious Prosecution
☐ Malpractice-Medical
☐ Malpractice-Professional
☐ Misrepresentation
☐ Motor Tort
☒ Negligence
☐ Nuisance
☐ Premises Liability
☐ Product Liability
☐ Specific Performance
☐ Toxic Tort
☐ Trespass
☐ Wrongful Death

**CONTRACT**
☐ Asbestos
☐ Breach
☐ Business and Commercial
☐ Confessed Judgment (Cont'd)
☐ Construction
☐ Debt
☐ Fraud

☐ Government
☐ Insurance
☐ Product Liability

**PROPERTY**
☐ Adverse Possession
☐ Breach of Lease
☐ Detinue
☐ Distress/Distrain
☐ Ejectment
☐ Forcible Entry/Detainer
☐ Foreclosure
  ☐ Commercial
  ☐ Residential
  ☐ Currency or Vehicle
  ☐ Deed of Trust
  ☐ Land Installments
  ☐ Lien
  ☐ Mortgage
  ☐ Right of Redemption
  ☐ Statement Condo
☐ Forfeiture of Property / Personal Item
☐ Fraudulent Conveyance
☐ Landlord-Tenant
☐ Lis Pendens
☐ Mechanic's Lien
☐ Ownership
☐ Partition/Sale in Lieu
☐ Quiet Title
☐ Rent Escrow
☐ Return of Seized Property
☐ Right of Redemption
☐ Tenant Holding Over

**PUBLIC LAW**
☐ Attorney Grievance
☐ Bond Forfeiture Remission
☐ Civil Rights
☐ County/Mncpl Code/Ord
☐ Election Law
☐ Eminent Domain/Condemn.
☐ Environment
☐ Error Coram Nobis
☐ Habeas Corpus
☐ Mandamus
☐ Prisoner Rights
☐ Public Info. Act Records
☐ Quarantine/Isolation
☐ Writ of Certiorari

**EMPLOYMENT**
☐ ADA
☐ Conspiracy
☐ EEO/HR
☐ FLSA
☐ FMLA
☐ Worker's Compensation
☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
☐ Assumption of Jurisdiction
☐ Authorized Sale
☐ Attorney Appointment
☐ Body Attachment Issuance
☐ Commission Issuance

☐ Constructive Trust
☐ Contempt
☐ Deposition Notice
☐ Dist Ct Mtn Appeal
☐ Financial
☐ Grand Jury/Petit Jury
☐ Miscellaneous
☐ Perpetuate Testimony/Evidence
☐ Prod. of Documents Req.
☐ Receivership
☐ Sentence Transfer
☐ Set Aside Deed
☐ Special Adm. – Atty
☐ Subpoena Issue/Quash
☐ Trust Established
☐ Trustee Substitution/Removal
☐ Witness Appearance-Compel

**PEACE ORDER**
☐ Peace Order

**EQUITY**
☐ Declaratory Judgment
☐ Equitable Relief
☐ Injunctive Relief
☐ Mandamus

**OTHER**
☐ Accounting
☐ Friendly Suit
☐ Grantor in Possession
☐ Maryland Insurance Administration
☐ Miscellaneous
☐ Specific Transaction
☐ Structured Settlements

**CC-DCM-002** (Rev. 12/2022)                Page 1 of 3

| IF NEW OR EXISTING CASE: RELIEF (Check All that Apply) | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☐ Judgment-Default | ☐ Reinstatement of Employment |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Arbitration | ☐ Financial Exploitation | ☒ Liability | ☐ Specific Performance |
| ☐ Asset Determination | ☒ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Attachment b/f Judgment | ☐ Foreclosure | ☐ Order | ☐ Writ-Execution |
| ☐ Cease & Desist Order | ☐ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Condemn Bldg | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Contempt | ☐ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☐ Court Costs/Fees | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☒ Damages-Compensatory | ☐ Judgment-Consent | ☐ Production of Records | ☐ Writ-Possession |
| ☐ Damages-Punitive | ☐ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |

*If you indicated **Liability** above,* mark one of the following. This information is not an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.    ☐ Liability is not conceded, but is not seriously in dispute.    ☒ Liability is seriously in dispute.

| MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs) | | |
|---|---|---|
| ☐ Under $10,000 | ☐ $10,000 - $30,000 | ☐ $30,000 - $100,000 | ☒ Over $100,000 |
| ☐ Medical Bills $ _____ | ☐ Wage Loss $ _____ | ☐ Property Damages $ _____ | |

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)
A. Mediation      ☒ Yes  ☐ No          C. Settlement Conference    ☒ Yes  ☐ No
B. Arbitration    ☐ Yes  ☒ No          D. Neutral Evaluation       ☐ Yes  ☒ No

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL**.*

### *(Case will be tracked accordingly)*

☐ 1/2 day of trial or less          ☐ 3 days of trial time
☐ 1 day of trial time               ☒ More than 3 days of trial time
☐ 2 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited** - Trial within 7 months of          ☐ **Standard** - Trial within 18 months of
Defendant's response                                 Defendant's response

EMERGENCY RELIEF REQUESTED

| COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR) |
|---|

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** - Trial within 7 months of Defendant's response       ☐ **Standard** - Trial within 18 months of Defendant's response

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

| CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE) | |
|---|---|
| ☐ Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ Civil-Short | Trial 210 days from first answer. |
| ☐ Civil-Standard | Trial 360 days from first answer. |
| ☐ Custom | Scheduling order entered by individual judge. |
| ☐ Asbestos | Special scheduling order. |
| ☐ Lead Paint | Fill in: Birth Date of youngest plaintiff_____. |
| ☐ Tax Sale Foreclosures | Special scheduling order. |
| ☐ Mortgage Foreclosures | No scheduling order. |

| CIRCUIT COURT FOR BALTIMORE COUNTY | |
|---|---|
| ☐ Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

May 21, 2025
_____
Date

300 East Lombard Street, Suite 1100
_____
Address

Baltimore          MD          21202
_____
City          State          Zip Code

/s/ Catherine A. Dickinson          1212130142
_____
Signature of Attorney / Party          Attorney Number

Catherine A. Dickinson  cdickinson@sbwdlaw.com
_____
Printed Name

E-FILED; Prince George's Circuit Court
Docket: 5/21/2025 3:54 PM; Submission: 5/21/2025 3:54 PM
Envelope: 21304389

JANE DOE CP                                        *       IN THE
c/o SBWD LAW                                                                          RS
300 East Lombard Street, Suite 1100               *       CIRCUIT COURT
Baltimore, Maryland 21202
                                                  *       FOR
        *Plaintiff*
                                                  *       PRINCE GEORGE'S COUNTY,
vs.
                                                  *       MARYLAND
JEHOVAH'S WITNESSES
GOVERNING BODY                                    *
1 Kings Drive
Warwick, New York 10987                           *       CASE NO.  C-16-CV-25-002783

and                                               *

KINGDOM HALL OF JEHOVAH'S                          *
WITNESSES
420 Rollins Avenue                                *
Capitol Heights, Maryland 20743
                                                  *
and
                                                  *
KINGDOM HALLS, INC.
4002 Ridgewood Avenue                             *
Baltimore, Maryland 21215
                                                  *
Serve on:          Bennie L. Bivens
                   2302 Koko Lane                 *
                   Baltimore, Maryland 21216
                                                  *
and
                                                  *
WATCHTOWER BIBLE AND TRACT
SOCIETY OF PENNSYLVANIA                           *
625 Red Mills Road
Wallkill, New York 12589                          *

and                                               *

WATCHTOWER BIBLE AND TRACT                         *
SOCIETY OF NEW YORK, INC.
100 Watchtower Drive                              *
Patterson, New York 12563
                                                  *

Serve on:      Watchtower Bible and Tract
               Society of New York, Inc.        *
               ATTN: Legal
               100 Watchtower Drive             *
               Patterson, New York 12563
                                                *

and
                                                *

WATCHTOWER BIBLE AND TRACT
SOCIETY OF FLORIDA, INC.                        *
100 Watchtower Drive
Patterson, New York 12563                       *

Serve on:      Watchtower Bible and Tract       *
               Society of Florida, Inc.
               ATTN: Legal                       *
               100 Watchtower Drive
               Patterson, New York 12563         *

and                                             *

CHRISTIAN CONGREGATION OF                       *
JEHOVAH'S WITNESSES, INC.
675 Red Mills Road                              *
Wallkill, New York 12589
                                                *

Serve on:      Christian Congregation of
               Jehovah's Witnesses              *
               ATTN: Legal
               675 Red Mills Road               *
               Wallkill, New York
                                                *

*Defendants*
*     *     *     *     *     *     *     *     *     *     *     *     *

## COMPLAINT

Plaintiff Jane Doe CP, by and through her attorneys, Michael J. Belsky, Catherine A.

Dickinson, Kellyn T. Wilcox, and Schlachman, Belsky, Weiner & Davey, P.A., hereby sues

Defendants Jehovah's Witnesses Governing Body (hereinafter referred to as "Governing Body"),

Kingdom Hall of Jehovah's Witnesses (hereinafter referred to interchangeably as "Kingdom Hall

Congregation" or "the Congregation"), Kingdom Halls, Inc. (hereinafter referred to as "Kingdom

2

Halls"), Watchtower Bible and Tract Society of Pennsylvania (hereinafter referred to as "Watchtower PA"), Watchtower Bible and Tract Society of New York, Inc. (hereinafter referred to as "Watchtower NY"), Watchtower Bible and Tract Society of Florida, Inc. (hereinafter referred to as "Watchtower FL"), and Christian Congregation of Jehovah's Witnesses (hereinafter referred to as "Christian Congregation"), and in support thereof states:

PARTIES, JURISDICTION, AND VENUE

1.      Defendant Governing Body is the governing body of the national congregation and is a business and/or religious entity conducting business in the State of New York, with its world headquarters at 1 Kings Drive, Tuxedo Park, New York 10987. Upon information and belief, Governing Body provides directions for Jehovah's Witnesses worldwide and decides all or part of the actions related to the operation of the organization, including, but not limited to, local congregations.

2.      Defendant Kingdom Hall Congregation is a business and/or religious entity that regularly conducts business in the State of Maryland, with its principal location at 420 Rollins Avenue, Capitol Heights, Maryland 20743 in Prince George's County, Maryland.

3.      Defendant Kingdom Halls is a religious corporation organized under the laws of the State of Maryland, with its principal location at 4002 Ridgewood Avenue, Baltimore, Maryland 21215 in Baltimore City, Maryland. Upon information and belief, Kingdom Halls is a branch associated with the various Watchtower organizations that provide guidance, support, and/or direction to local congregations in the State of Maryland.

4.      Defendant Watchtower PA is a religious corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal offices at 625 Red Mills Road, Wallkill, New York 12589.

3

5.     Defendant Watchtower NY is a religious corporation organized under the laws of the State of New York with its principal offices at 100 Watchtower Drive, Patterson, New York 12563.

6.     Defendant Watchtower FL is a religious corporation organized under the laws of the State of New York, with its principal offices located at 100 Watchtower Drive, Patterson, New York 12563.

7.     Defendant Christian Congregation is a religious corporation organized under the laws of the State of New York, with its principal offices located at 675 Red Mills Road, Wallkill, New York 12589.

8.     Plaintiff Jane Doe CP (hereinafter "Plaintiff Doe") was at all times relevant hereto a resident of Prince George's County, Maryland. Plaintiff is currently a resident of Washington County, Maryland.

9.     Personal jurisdiction over Defendants is satisfied in accordance with Sections 6-102 and 6-103 of the Courts and Judicial Proceedings Article of the Maryland Annotated Code as Defendants Kingdom Hall Congregation and Kingdom Halls maintain their principal place of business in the State of Maryland, and the Court has specific personal jurisdiction over all Defendants as the conduct herein transpired in the State of Maryland.

10.     Subject matter jurisdiction in this Honorable Court is provided by Section 1-501 of the Courts and Judicial Proceedings Article of the Maryland Annotated Code as the counts and violations of law alleged herein fall within the Court's common-law and equity powers and there is no conflicting law limiting this Court's jurisdiction with respect to them.

11.     Venue in this claim is invoked in Prince George's County where the Defendants carry on regular business and/or habitually engage in vocation, as well as the location where the

4

alleged incidents occurred, pursuant to Sections 6-201 and 6-202 of the Courts and Judicial Proceedings Article of the Maryland Annotated Code.

STATEMENT OF FACTS COMMON TO ALL COUNTS

12.     This is a claim allowed by the Child Victims Act of 2023 because it arises out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor. The claims arise out of negligence and vicarious liability, for which Plaintiff seeks damages. As is outlined in further detail below, Plaintiff was subjected to a pattern of sexual misconduct by Eric Ingram, Defendants' actual and/or apparent agent, servant and/or employee.

13.     As is articulated in further detail below, Plaintiff alleges that sexual offenses, as defined by Section 5-701 of the Family Law Article of the Maryland Annotated Code, were committed against her when she was a minor.

*The Hierarchical Structure and History of the Jehovah's Witnesses Church*

14.     Upon information and belief, the Governing Body provides directions for Jehovah's Witnesses and local congregations worldwide and decides all or part of the actions related to the operation of the organization. Upon information and belief, the Governing Body has a chairman, who is selected based on the annual rotation system of the chairmanship among its members.

15.     The organizational structure of the Jehovah's Witnesses is hierarchical, with the Governing Body as the organizational head of the Jehovah's Witnesses. Upon information and belief, authority flows downward from the Governing Body to local levels of the organization, which is made up of local congregations.

16.     Upon information and belief, at all times relevant hereto, the Governing Body, jointly with Kingdom Halls, Watchtower PA, Watchtower NY, Watchtower FL and/or the

5

Christian Congregation (and/or any predecessor or successor entities), were responsible for establishing all policies, procedures, bylaws and/or protocols for congregations of Jehovah's Witnesses in the United States, including, but not limited to, Kingdom Hall Congregation.

17.     Further, upon information and belief, the Governing Body, jointly with Kingdom Halls, Watchtower PA, Watchtower NY, Watchtower FL and/or the Christian Congregation (and/or any predecessor or successor entities), were responsible for establishing the policies, procedures and/or protocols for appointing and supervising elders and ministerial servants within the Jehovah's Witness organization and local congregations, including, but not limited to, Kingdom Hall Congregation.

18.     Additionally, upon information and belief, the Governing Body, jointly with Kingdom Halls, Watchtower PA, Watchtower NY, Watchtower FL and/or the Christian Congregation (and/or any predecessor or successor entities), were responsible for participating in the appointment of elders and ministerial servants, and/or exercising supervision and control over elders and ministerial servants, within the Jehovah's Witness organization, including, but not limited to, Kingdom Hall Congregation.

19.     At all times relevant hereto, administrators, employees and others who served various Jehovah's Witnesses institutions acted as the Governing Body's actual and/or apparent agents, servants and/or employees.

20.     Upon information and belief, Watchtower PA, Watchtower NY, Watchtower FL and/or Kingdom Halls are legal entities utilized by Jehovah's Witnesses to direct, administer and disseminate policies, procedures and/or protocols and other texts for the religious group, and hold title to properties.

6

21.    At all times relevant hereto, administrators, employees and others who served various Jehovah's Witnesses institutions acted as the Watchtower PA, Watchtower NY, Watchtower FL and/or Kingdom Halls's actual and/or apparent agents, servants and/or employees.

22.    Under the supervision and control of the Governing Body, Watchtower PA, Watchtower NY, Watchtower FL and/or Kingdom Halls oversee activities of Jehovah's Witnesses within the United States and function as businesses by engaging in numerous revenue-producing activities and soliciting money from their members. Upon information and belief, Defendants Governing Body, Watchtower PA, Watchtower NY, Watchtower FL and/or Kingdom Halls are, first and foremost, corporate institutions moonlighting as religious organizations, and are primarily engaged in the real estate and publication industries.

23.    Upon information and belief, the Christian Congregation is responsible for "congregational matters" and functions as a business by engaging in numerous revenue-producing activities and soliciting money from its members.

24.    At all times relevant hereto, administrators, employees and others who served various Jehovah's Witnesses institutions acted as Christian Congregation's actual and/or apparent agents, servants and/or employees.

25.    Upon information and belief, currently and at the time of the incidents alleged herein, Defendants Governing Body, Watchtower PA, Watchtower NY, Watchtower FL and/or Kingdom Halls are, and were, jointly responsible for governing Jehovah's Witnesses and Jehovah's Witnesses congregations, including, but not limited to, Kingdom Hall Congregation. Upon information and belief, Defendant's governance included, but was not limited to: supervising and controlling all of their actual and/or apparent agents, servants and/or employees located at the

7

Kingdom Hall Congregation, including Eric Ingram; and the assignment of elders of the Kingdom Hall Congregation.

26.    Upon information and belief, each congregation, including, but not limited to, Kingdom Hall Congregation, is under the jurisdiction of a "Circuit Overseer," a traveling agent of Watchtower organizations, including, but not limited to, Defendants Governing Body, Watchtower PA, Watchtower NY, Watchtower FL and/or Kingdoms Hall, who is assigned a region of approximately four (4) states. Upon information and belief, each Circuit Overseer spends his time traveling from congregation to congregation, appointed as a direct representative of the Governing Body.

27.    Upon information and belief, at all times relevant hereto, Defendants Governing Body, Watchtower PA, Watchtower NY, Watchtower FL and/or Kingdom Halls, jointly and/or individually, had ultimate authority and responsibility for training, ordination, placement, transfer and/or suspension of elders and ministerial servants.

28.    Kingdom Hall Congregation's business involves the operation of the local congregation. At all times relevant hereto, Kingdom Hall acted as an actual and/or apparent agent, servant and/or employee of Defendants Governing Body, Watchtower PA, Watchtower NY, Watchtower FL and/or Kingdom Halls.

29.    Upon information and belief, congregations, including, but not limited to, Kingdom Hall Congregation, are locally managed by a "Body of Elders," which is approved by the Governing Body. Upon information and belief, the Body of Elders is supervised by the Circuit Overseer. Upon information and belief, elders and/or Circuit Overseers are actual and/or apparent agents, servants and/or employees of Defendants Governing Body, Watchtower PA, Watchtower NY, Watchtower FL and/or Kingdom Halls.

8

30.     Upon information and belief, elders, including the elders of Kingdom Hall Congregation, organize weekly church meetings, direct door-to-door preaching activities, select potential candidates for becoming elders and ministerial servants, handle finances for the congregation, and form and/or serve on committees in the organization's quasi-judicial proceedings.

31.     Upon information and belief, local elders, including, but not limited to, the elders of Kingdom Hall Congregation, have day-to-day authority over training, ordination, placement, transfer and/or suspension of all ministerial servants within their congregations. Upon information and belief, this authority includes the ability to suspend, temporarily or permanently, the title and/or relationship of ministerial servants with the organization. Upon information and belief, ministerial servants maintain their status at the pleasure of the elders and of the overall Jehovah's Witnesses organizational structure.

32.     Upon information and belief, at all times relevant hereto, Defendants Governing Body, Watchtower PA, Watchtower NY, Watchtower FL and/or Kingdom Halls were in a superior position to receive sensitive information regarding immoral and criminal conduct within the organization and at local congregations, including, but not limited to, Eric Ingram. This information was not available to members of the public, nor to the Plaintiff.

33.     Upon information and belief, through their words and deeds, Defendants, directly and/or by and through their actual and/or apparent agents, servants and/or employees, explicitly and implicitly encouraged members of Jehovah's Witnesses congregations, including, but not limited to, Plaintiff and her family, to accept each ministerial servant, including, but not limited to, Eric Ingram, as men worthy of being entrusted with children, and to be worthy of the

9

responsibility for children's physical and spiritual safety, thereby inducing children, including, but not limited to, Plaintiff, to entrust themselves to the company and care of these men.

34.    The intricate and complex structure of the Defendants evidences their intent to conceal unlawful behavior, especially including their intent to cover up widespread instances of child abuse. Upon information and belief besides Defendants Governing Body, Watchtower PA, Watchtower NY, Watchtower FL and/or Kingdom Halls, Jehovah's Witnesses use dozens of legal entities in various countries, many of which include in their name such terms as "Watch Tower," "Watchtower," or a translation of one of these names. Upon information and belief, the authority of these legal entities flows downward into local congregations, many of which are also formed as legal entities.

35.    Upon information and belief, Defendants Governing Body, Watchtower PA, Watchtower NY, Watchtower FL and/or Kingdom Halls's role in this cover-up includes approving members of congregations for promotions through the ranks of the organization, forming committees, and/or other personnel managerial tasks within the United States, including, but not limited to, at Kingdom Hall Congregation.

36.    Upon information and belief Defendants Governing Body, Watchtower PA, Watchtower NY, Watchtower FL and/or Kingdom Halls's role in this cover-up includes establishing policies, procedures and/or protocols for congregations throughout the world, including, but not limited to, Kingdom Hall Congregation, and by constantly revising those policies and procedures to protect known child abusers and corporate assets.

37.    Upon information and belief, Defendant Kingdom Hall Congregation administers these unlawful directives from Defendants Governing Body, Watchtower PA, Watchtower NY, Watchtower FL and/or Kingdom Halls, including, but not limited to, appointing elders and/or

ministerial servants who are known to be sexual predators, providing scriptural guidance and corporate policy intended to conceal child sexual abuse, and overseeing construction and financial structure of the various meeting places, known as "Kingdom Halls," in an effort to hide corporate assets.

38.    Upon information and belief, at all times relevant hereto, the policies and procedures of Defendants dictated that complaints of wrongdoing against a member of the Church should be brought before and investigated by the elders of the member's congregation. By decreeing that the Church is the only forum to which children can raise complaints of child abuse, Defendants assumed responsibility for protecting children who have been sexually abused.

39.    Upon information and belief, and at the time of the incidents alleged herein, the response chain for such complaints starts with a complaint made to any elder, either by the victim or a member with knowledge of the abuse. Upon information and belief, that elder then forms an investigation committee of three (3) elders, or contacts other elders to do so, to find out whether the alleged wrongdoing was witnessed by two (2) people, or whether the wrongdoer is willing to confess.

40.    Upon information and belief, the "two-witness" policy is an edict from Defendants Governing Body, Watchtower PA, Watchtower NY, Watchtower FL and/or Kingdoms Hall and is very strict – even in cases of child molestation if there are not at least two (2) eyewitnesses to the abuse and the wrongdoer denies the wrong, the elders will not make a finding of guilt against the accused.

41.    Upon information and belief, and at the time of the incidents alleged herein, if the wrongdoer confesses, or the investigative committee determines that there are two (2) witnesses, the elders of that congregation form a Judicial Committee for a hearing on the charge of

11

wrongdoing. Upon information and belief, the elders will issue a punishment following a determination of guilt, which can range from private admonitions to the ultimate punishment of disfellowship, which is sometimes called excommunication or "being shunned." Upon information and belief, local congregations also are required to call the legal department of Defendants Governing Body, Watchtower PA, Watchtower NY, Watchtower FL and/or Kingdom Halls to report the abuse, and the legal department determines whether to report it to the authorities.

42.     A person who is disfellowshipped can seek reinstatement into the congregation by written request to the elders, which was also true at the time of the incidents alleged herein.

*Jane Doe CP*

43.     From approximately the late 1990s to early 200s, Plaintiff Doe was a Jehovah's Witness and member of the Kingdom Hall Congregation. In 2002-2005, Plaintiff Doe was approximately eleven (11) to thirteen (13) years old. At all times material to the abuse, Plaintiff was a prepubescent minor.

44.     Plaintiff grew up in a devout Jehovah's Witness family. In the late 1990s, when Plaintiff Doe was approximately seven (7) to eight (8) years old, her family joined the Congregation.

45.     Eric Ingram was a member of the Congregation and held a position as an Elder I or around the late 1990s to early 2000s. At the time of the incidents alleged herein, Eric Ingram was forty-five (45) to fifty (50) years old - a legal adult and an adult in the eyes of the Jehovah's Witnesses.

46.     As a member of the congregation, Plaintiff was in regular contact with the Congregation elders. Upon information and belief, Jehovah's Witnesses institutions, including

12

Defendants, encouraged children like Plaintiff to revere the Jehovah's Witnesses organization and its male members from a young age.

47.    As a member of the Congregation, Plaintiff participated in various organized events through the Church, which is how she met Eric Ingram. Upon information and belief, Ingram used his position as an Elder to befriend Plaintiff's family.

48.    In or around the early 2000s, Ingram began visiting Plaintiff's family home in Prince George's County, Maryland. During the course of these visits, Ingram would pull Plaintiff, who was approximately eleven (11) years old at the time, onto his lap and kiss her shoulders and rub her legs.

49.    Eventually, Ingram began picking Plaintiff up from school to take her on one-on-one "dates." In Ingram's car on the way to these outings, he would rub Plaintiff's legs and tell her she should "act as a woman" and "that's how I like my women." On numerous occasions, Ingram would kiss Plaintiff, touch her inappropriately, and make sexually inappropriate comments.

50.    In or around 2004 to 2005, when Plaintiff was approximately thirteen (13) years old, Ingram began visiting Plaintiff's home unannounced. On one of those occasions, Plaintiff was in her room, undressing, when she heard her bedroom door start to open. Thinking that it was a family member, Plaintiff yelled that she was changing and to wait. Despite that admonition, her bedroom door continued to open and it was Ingram standing in the doorway, staring at the Plaintiff. Plaintiff turned away from him and attempted to cover up her body and exposed breasts.

51.    In or around 2005, Plaintiff told her friend about the abuse and harassment by Ingram and her discomfort. When her friend threatened to tell Plaintiff's parents if she did not do so herself, Plaintiff informed her parents of Ingram's actions. Plaintiff's parents then reported Ingram, an Elder, to the Elders of the Congregation.

52.    Upon information and belief, as a result of the reporting and in accordance with Defendants' procedure for these types of complaints, Plaintiff was subjected to a meeting with several elders to discuss the assault, during which she was asked invasive, accusatory and personal questions. Upon information and belief, at the time of this inquisition, Plaintiff was alone, scared and without the assistance of a parent or guardian. In a shocking turn of events, Ingram was permitted by the Elders of the Congregation to sit on the panel as an investigating Elder. Upon questioning by the other investigating Elders, Ingram stated that Plaintiff was telling the truth and he wanted to apologize. Upon information and belief, Ingram also begged Plaintiff and her family not to notify law enforcement. Upon information and belief, the Elders conducting this inquiry took detailed notes and submitted these notes to Defendants.

53.    Upon information and belief, nothing was done in response to Plaintiff's complaint, and Ingram continued serving as an Elder at Kingdom Hall Congregation.

54.    Following the Congregation's investigation, Plaintiff continued to see Ingram at services, during which he would wink at her and rub her back and arms. Plaintiff further was approached by Ingram in public on several occasions, including one incident at Lanham Skate Center during which he followed her and rubbed her lower back over her objection, almost causing her to fall.

55.    Following Plaintiff's reporting, she and her family were approached by other members of the Congregation who indicated that Ingram had perpetrated similar acts with another young female member of the Congregation before Ingram's interactions with Plaintiff. Additionally, at the Congregation's annual festival numerous women approached Plaintiff and her mother thanking Plaintiff for being "brave" and that similar events had happened with Ingram and other young girls.

14

56.     In or around 2007, Ingram was disfellowshipped by the Congregation. Plaintiff and her family were not provided with any information as to the basis for the disfellowship, nor the timing.

57.     Upon information and belief, in or around 2002, local newspapers reported on the allegations of child sexual abuse against Elders and other servants of Jehovah's Witnesses congregations, and the Jehovah's Witnesses repeated, willfull ignorance of child sexual abuse. As a part of that reporting, David Semonian, a spokesman for the Church, confirmed that when a member comes forth with allegations of abuse, elders meet with the accuser and the accused to investigate the complaint. Specifically, Mr. Semonian stated "[w]e do look for some corroborating evidence" because "[t]he Bible directs that no single witness should rise up against any man."

58.     Mr. Semonian's statements further confirmed that an individual found guilty of child molestation by the Church is not necessarily immediately shunned, and that dismissal of a member is a last resort for those who become a danger to the Church, stating "[i]t's not that we're kicking someone out [...] [i]t's an arrangement by God to keep the congregation from harmful influences."

59.     Upon information and belief, as a part of that reporting, it was further confirmed that members of the Jehovah's Witnesses Church who are convicted child abusers are sometimes still later sent out for door-to-door proselytizing.

60.     The Defendants' disregard for the known danger of child sexual abuse at their facilities was a function of both negligence and the Defendants' recognition that their stature, reputation, and economic interest would be negatively affected by any public discourse of the Defendants' failure to control, supervise, prevent and remove known sexual predators from their ranks. At best, this is blatant ignorance. At worst, it is nefarious self-interest.

15

61.    As a direct and proximate result of the negligent conduct of the Defendants and their actual and/or apparent agents, servants and/or employees, Plaintiff has suffered serious and severe physical and emotional damages of a permanent and lasting nature.

62.    As a direct and proximate result of the negligent acts and/or omissions of Defendants, and their actual and/or apparent agents, servants and/or employees, Plaintiff has incurred, and will continue to incur, significant medical, therapy and/or counseling expenses. Further, Plaintiff has suffered, and will continue to suffer, a loss of earning capacity as a direct and proximate result of the negligent acts and/or omissions of Defendants and their actual and/or apparent agents, servants and/or employees. Plaintiff will continue to incur such expenses in the future that she may become unwilling or unable to pay.

63.    All present and future injuries and economic loss sustained by Plaintiff was a direct and proximate result of the occurrences described herein and were solely caused by the actions, inactions and/or breaches in the standard of care by Defendants, without any negligence, contribution, assumption of the risk, or want of due care on the part of the Plaintiff.

COUNT I – NEGLIGENCE
*Plaintiff Jane Doe CP v. Defendant Kingdom Hall of Jehovah's Witnesses*

Plaintiff Jane Doe CP, by and through her attorneys, Michael J. Belsky, Catherine A. Dickinson, Kellyn T. Wilcox, and Schlachman, Belsky, Weiner & Davey, P.A., hereby sues Defendant Kingdom Hall of Jehovah's Witnesses, for negligence and incorporates paragraphs 1 through 63 above as if fully set forth herein, and further states as follows:

64.    Defendant Kingdom Hall Congregation, directly and through its actual and/or apparent agents, servants and/or employees, including, but not limited to, elders and other staff, undertook and otherwise owed its members, individuals present on the property, and members of the public a duty of care commensurate with the law, including, but not limited to, maintaining a

16

safe environment for its adolescent invitees and to exercise reasonable care to prevent and mitigate foreseeable harm caused by its actual and/or apparent agents, servants and/or employees. Further, given Plaintiff's status as a minor child, Defendant had a duty to exercise and provide heightened vigilance, supervision and care to her as compared to what would be required for an adult.

65.    Defendant Kingdom Hall Congregation, despite being in a position to comprehend and appreciate, via actual and/or constructive knowledge, the danger presented by Ingram, an actual and/or apparent agent, servant, and/or employee of Defendant Kingdom Hall Congregation, permitted and even encouraged Ingram to interact with other young female congregants.

66.    At all relevant times, Defendant established and/or enforced numerous policies, procedures, protocols, rules and/or guidelines ostensibly aimed at preventing child sexual abuse and addressing such abuse when it occurred. By instituting these measures, Defendant Kingdom Hall Congregation undertook and assumed a duty to exercise reasonable care toward Plaintiff to prevent and mitigate foreseeable harm resulting from sexual abuse committed by their actual and/or apparent agents, servants and/or employees.

67.    Defendant Kingdom Hall Congregation had actual and/or constructive knowledge of Ingram's propensity to abuse children, including, but not limited to, complaints against Ingram of child sexual abuse, harassment and assault. Nonetheless, Defendant did nothing to limit and/or prevent Ingram's interactions with children and, in certain instances, encouraged Ingram as an actual and/or apparent agent, servant and/or employee of the Congregation to spend time with children.

68.    As a foreseeable result, Ingram sexually abused Plaintiff and other minor victims.

69.    At all times relevant hereto, Ingram was aided in accomplishing his sexual abuse of Plaintiff and other children by the existence of his agency relationship with each of the named

17

Defendants. By virtue of that status, Ingram was permitted access to Plaintiff and other children both on and off the property of the Congregation.

70.    Defendant, directly and/or through its actual and/or apparent agents, servants and/or employees, repeatedly and systematically breached the duty of care it owed to its minor members, specifically Plaintiff Jane Doe CP, through numerous acts and/or omissions, including, but not limited to:

a.    Failing to create and/or enforce policies and/or procedures for individuals to report assaults and/or abuse;

b.    Failing to use reasonable care in supervising its employees, including, but not limited to, Ingram, in their interactions, orders, and instructions as it relates to minor members of the Jehovah's Witnesses Church;

c.    Failing to implement reasonable security measures for the protection of minor members;

d.    Failing to properly vet and screen individuals eligible for positions of power within the Congregation, including, but not limited to, Ingram, who would have direct contact with, and supervision of, minor children, including Plaintiff;

e.    Failing to monitor employees to reasonably discover any instances of manipulation, grooming, and emotional and/or physical abuse;

f.    Failing to ensure that supervisors and/or employees had avenues available to report manipulation, grooming, and emotional and/or physical abuse;

g.    Failing to terminate employees who do not conform to policies outlined and maintained, or who exhibit inappropriate and/or criminal behavior;

18

h. Hiring, supervising and/or retaining actual and/or apparent agents, servants and/or employees who had allegations of child sexual abuse;

i. Failing to properly respond to, investigate, and correct complaints regarding inappropriate behavior within the Jehovah's Witnesses Church and the Congregation; and:

j. Acting in an otherwise careless, reckless, and/or negligent manner.

71.    As a direct and proximate result of the negligent acts and/or omissions of Defendant, Plaintiff was caused to suffer serious physical, emotional, and psychological injuries, including, but not limited to, anxiety, depression, post-traumatic stress disorder, and other significant injuries, all of which are permanent.

72.    As a direct and proximate result of the negligent acts and/or omissions of Defendant, Plaintiff was caused to pay, or became obligated to pay, great sums of money for care and treatment of her injuries and will continue to incur such expenses from time to time in the future and may become unwilling or unable to pay in the future.

73.    As a direct and proximate result of the negligent acts and/or omissions of Defendant, Plaintiff was prevented, and is prevented, from engaging fully and to the same extent in her usual activities and pursuits, and has suffered, and will continue to suffer, a substantial loss of earning capacity.

74.    Plaintiff asserts that all of her related injuries, past, present, and future, are and will be a direct and proximate result of the negligent acts and/or omissions of Defendant, without any negligence, contribution, assumption of risk, or want of due care, on the part of Plaintiff.

WHEREFORE, Plaintiff Jane Doe CP, by and through her attorneys, Michael J. Belsky, Catherine A. Dickinson, Kellyn T. Wilcox, and Schlachman, Belsky, Weiner & Davey, P.A.,

19

demands judgment against Defendant Kingdom Hall of Jehovah's Witnesses, jointly and severally, for economic and non-economic damages in excess of the amount of Seventy-Five Thousand Dollars ($75,000.00) with interests and costs.

COUNT II – NEGLIGENCE

*Plaintiff Jane Doe CP v. Defendants Jehovah's Witnesses Governing Body, Kingdom Halls, Inc., Watchtower Bible and Tract Society of Pennsylvania, Watchtower Bible and Tract Society of New York, Inc., Watchtower Bible and Tract Society of Florida, Inc., and Christian Congregation of Jehovah's Witnesses, Inc.*

Plaintiff Jane Doe CP, by and through her attorneys, Michael J. Belsky, Catherine A. Dickinson, Kellyn T. Wilcox, and Schlachman, Belsky, Weiner & Davey, P.A., hereby sues Defendants Jehovah's Witnesses Governing Body, Kingdom Halls, Inc., Watchtower Bible and Tract Society of Pennsylvania, Watchtower Bible and Tract Society of New York, Inc., Watchtower Bible and Tract Society of Florida, Inc., and Christian Congregation of Jehovah's Witnesses, Inc., for negligence and incorporates paragraphs 1 through 74 above as if fully set forth herein, and further states as follows:

75.    Defendants, directly and through their actual and/or apparent agents, servants and/or employees, including, but not limited to, local congregations, elders and other staff, undertook and otherwise owed their members, individuals present on their property, and members of the public a duty of care commensurate with the law, including, but not limited to, maintaining a safe environment for adolescent invitees and to exercise reasonable care to prevent and mitigate foreseeable harm caused by its actual and/or apparent agents, servants and/or employees. Further, given Plaintiff's status as a minor child, Defendants had a duty to exercise and provide heightened vigilance, supervision and care to her as compared to what would be required for an adult.

76.    Defendants, despite being in a position to comprehend and appreciate, via actual and/or constructive knowledge, the danger presented by Ingram, an actual and/or apparent agents,

20

servant, and/or employee of Defendants, permitted and even encouraged Ingram to interact with other young female congregants.

77.    At all relevant times, Defendants established and/or enforced numerous policies, procedures, protocols, rules and/or guidelines ostensibly aimed at preventing child sexual abuse and addressing such abuse when it occurred. By instituting these measures, Defendants undertook and assumed a duty to exercise reasonable care toward Plaintiff to prevent and mitigate foreseeable harm resulting from sexual abuse committed by their actual and/or apparent agents, servants and/or employees.

78.    Defendants had actual and/or constructive knowledge of the danger of child sexual abuse and Ingram's propensity to abuse children, including, but not limited to, complaints against Ingram of child sexual abuse and assault. Nonetheless, Defendants did nothing to limit and/or prevent Ingram's interactions with children and, in certain instances, encouraged Ingram as an actual and/or apparent agent, servant and/or employee to spend time with children.

79.    As a foreseeable result, Ingram sexually abused Plaintiff and other minor victims.

80.    At all times relevant hereto, Ingram was aided in accomplishing his sexual abuse of Plaintiff and other children by the existence of his agency relationship with each of the named Defendants. By virtue of that status, Ingram was permitted access to Plaintiff and other children both on and off the property of the Congregation.

81.    Defendants further had actual and/or constructive knowledge of the investigation and handling, or lack thereof, of allegations of child sexual abuse within their local congregations, including, but not limited to, Kingdom Hall Congregation. Despite such knowledge, Defendants permitted repeated complaints of child sexual abuse, including, but not limited to, the allegations of Plaintiff against Ingram, to be improperly vetted, investigated and taken seriously. Defendants

21

also failed to report same to local law enforcement or any authorities. As a direct and proximate result, and foreseeably, child sexual abuse, despite being reported, was rampant and unchecked in the Jehovah's Witnesses Church, including, but not limited to, Kingdom Hall Congregation, giving child molesters unfettered access to children with little to no consequences for abuse.

82.    Defendants, directly and/or through their actual and/or apparent agents, servants and/or employees, repeatedly and systematically breached the duty of care they owed to their minor members, specifically Plaintiff Jane Doe CP, through numerous acts and/or omissions, including, but not limited to:

  a.  Failing to create and/or enforce policies and/or procedures for individuals to report assaults and/or abuse;

  b.  Failing to use reasonable care in supervising its employees, including, but not limited to, Ingram, in their interactions, orders, and instructions as it relates to minor members of the Jehovah's Witnesses Church;

  c.  Failing to implement reasonable security measures for the protection of minor members;

  d.  Failing to properly vet and screen individuals eligible for positions of power within the Congregation, including, but not limited to, Ingram, who would have direct contact with, and supervision of, minor children, including Plaintiff;

  e.  Failing to monitor employees to reasonably discover any instances of manipulation, grooming, and emotional and/or physical abuse;

  f.  Failing to ensure that supervisors and/or employees had avenues available to report manipulation, grooming, and emotional and/or physical abuse;

22

g.  Failing to terminate employees who do not conform to policies outlined and maintained, or who exhibited inappropriate and/or criminal behavior;

h.  Hiring, supervising and/or retaining actual and/or apparent agents, servants and/or employees who had allegations of child sexual abuse;

i.  Failing to properly respond to, investigate, and correct complaints regarding inappropriate behavior within the Jehovah's Witnesses Church and the Congregation; and:

j.  Acting in an otherwise careless, reckless, and/or negligent manner.

83.    As a direct and proximate result of the negligent acts and/or omissions of Defendants, Plaintiff was caused to suffer serious physical, emotional, and psychological injuries, including, but not limited to, anxiety, depression, post-traumatic stress disorder, and other significant injuries, all of which are permanent.

84.    As a direct and proximate result of the negligent acts and/or omissions of Defendants, Plaintiff was caused to pay, or became obligated to pay, great sums of money for care and treatment of her injuries and will continue to incur such expenses from time to time in the future and may become unwilling or unable to pay in the future.

85.    As a direct and proximate result of the negligent acts and/or omissions of Defendants, Plaintiff was prevented, and is prevented, from engaging fully and to the same extent in her usual activities and pursuits, and has suffered, and will continue to suffer, a substantial loss of earning capacity.

86.    Plaintiff asserts that all of her related injuries, past, present, and future, are and will be a direct and proximate result of the negligent acts and/or omissions of Defendants, without any negligence, contribution, assumption of risk, or want of due care, on the part of Plaintiff.

23

WHEREFORE, Plaintiff Jane Doe CP, by and through her attorneys, Michael J. Belsky, Catherine A. Dickinson, Kellyn T. Wilcox, and Schlachman, Belsky, Weiner & Davey, P.A., demands judgment against Defendants Jehovah's Witnesses Governing Body, Kingdom Halls, Inc., Watchtower Bible and Tract Society of Pennsylvania, Watchtower Bible and Tract Society of New York, Inc., Watchtower Bible and Tract Society of Florida, Inc., and Christian Congregation of Jehovah's Witnesses, Inc., jointly and severally, for economic and non-economic damages in excess of the amount of Seventy-Five Thousand Dollars ($75,000.00) with interests and costs.

## COUNT III – NEGLIGENT SUPERVISION, MONITORING, TRAINING AND RETENTION
*Plaintiff Jane Doe CP v. Defendants Kingdom Hall of Jehovah's Witnesses, Jehovah's Witnesses Governing Body, Kingdom Halls, Inc., Watchtower Bible and Tract Society of Pennsylvania, Watchtower Bible and Tract Society of New York, Inc., Watchtower Bible and Tract Society of Florida, Inc., and Christian Congregation of Jehovah's Witnesses, Inc.*

Plaintiff Jane Doe CP, by and through her attorneys, Michael J. Belsky, Catherine A. Dickinson, Kellyn T. Wilcox, and Schlachman, Belsky, Weiner & Davey, P.A., hereby sues Defendants Kingdom Hall of Jehovah's Witnesses, Jehovah's Witnesses Governing Body, Kingdom Halls, Inc., Watchtower Bible and Tract Society of Pennsylvania, Watchtower Bible and Tract Society of New York, Inc., Watchtower Bible and Tract Society of Florida, Inc., and Christian Congregation of Jehovah's Witnesses, Inc., for negligent supervision, monitoring, training and retention, and incorporates paragraphs 1 through 93 above as if fully set forth herein, and further states as follows:

87.     Supervision of actual and/or apparent agents, servants and/or employees within these Defendants' control was, and is, a mandatory and unqualified duty.

88.     Defendants, directly by and through their actual and/or apparent agents, servants and/or employees, each had a duty to engage in reasonable supervision, monitoring, training and

24

retention for any employees who interacted with children, as well as any who fielded, investigated, vetted and/or reported instances of child abuse.

89.    Defendants were intimately familiar with, and had actual and/or constructive notice of men with positions of power within the Jehovah's Witnesses Church, including, but not limited to, publishers, elders, teachers, ministerial servants, and other actual and/or apparent agents, servants, and/or employees of the Defendants, molesting children within all levels of the Jehovah's Witnesses organization. Further, Defendants had actual and/or constructive notice of the failures within their organization to properly investigate these claims, take action to protect children and other members, and report these incidents to law enforcement.

90.    Prior to Plaintiff's exposure to Ingram, and during the period in which Plaintiff was sexually abused by Ingram, the Defendants' policies, created for the sake of their own reputations and the reputation of the Church, were that the actions of known child predators were to remain hidden from public knowledge, not to be reported to law enforcement, prosecutors, and/or child welfare authorities.

91.    Defendants, by and through their actual and/or apparent agents, servants and/or employees, knew or should have reasonably known, of Ingram's propensity for child sexual abuse, that Ingram perpetrated sexual acts against Plaintiff and other children, and that he was capable of committing further sexual acts against Plaintiff and/or other children.

92.    Despite all of this knowledge, Defendants failed to properly observe, supervise, and monitor areas and individuals where it was known, knowable and/or foreseeable that young children could be victims of sexual abuse without proper supervision.

93.    Defendants, directly and/or by and through their actual and/or apparent agents, servants, and/or employees, repeatedly and systematically breached the duty of care they owed

their minor children members, specifically Plaintiff Jane Doe CP, through numerous acts and/or omissions, including, but not limited to:

    a.  Failing to create and/or enforce policies and/or procedures for individuals to report assaults and/or abuse;

    b.  Failing to use reasonable care in supervising its employees, including, but not limited to, Ingram, in their interactions, orders, and instructions as it relates to minor members of the Jehovah's Witnesses Church;

    c.  Failing to implement reasonable security measures for the protection of minor members;

    d.  Failing to properly vet and screen individuals eligible for positions of power within the Congregation, including, but not limited to, Ingram, who would have direct contact with, and supervision of, minor children, including Plaintiff;

    e.  Failing to monitor employees to reasonably discover any instances of manipulation, grooming, and emotional and/or physical abuse;

    f.  Failing to ensure that supervisors and/or employees had avenues available to report manipulation, grooming, and emotional and/or physical abuse;

    g.  Failing to terminate employees who do not conform to policies outlined and maintained, or who exhibited inappropriate and/or criminal behavior;

    h.  Hiring, supervising and/or retaining actual and/or apparent agents, servants and/or employees who had allegations of child sexual abuse;

    i.  Failing to properly respond to, investigate, and correct complaints regarding inappropriate behavior within the Jehovah's Witnesses Church and the Congregation;

26

j.   Enabling Ingram, by failing to maintain proper policies, procedures and/or protocols, to have unrestricted access to children and to serve in a position of trust and authority;

k.   Encouraging Ingram to come into one-on-one contact with Plaintiff despite knowing of his desire to sexually abuse children and his history of doing same;

l.   Failing to properly monitor and/or supervise Ingram after providing him access to children;

m.   Failing to properly investigate the actions of actual and/or apparent agents, servants and/or employees to ensure that children were subjected to safe and appropriate clergy;

n.   Failing to monitor for and subsequently investigate acts of sexual abuse and sexual acts committed by Ingram;

o.   Failing to remove Ingram from positions where he could act on his propensity and disposition to commit sexual abuse; and:

p.   Acting in an otherwise careless, reckless, and/or negligent manner.

94.    As a direct and proximate result of the negligent acts and/or omissions of Defendants, Plaintiff was caused to suffer serious physical, emotional, and psychological injuries, including, but not limited to, anxiety, depression, post-traumatic stress disorder, and other significant injuries, all of which are permanent.

95.    As a direct and proximate result of the negligent acts and/or omissions of Defendants, Plaintiff was caused to pay, or became obligated to pay, great sums of money for care and treatment of her injuries and will continue to incur such expenses from time to time in the future and may become unwilling or unable to pay in the future.

27

96.    As a direct and proximate result of the negligent acts and/or omissions of Defendants, Plaintiff was prevented, and is prevented, from engaging fully and to the same extent in her usual activities and pursuits, and has suffered, and will continue to suffer, a substantial loss of earning capacity.

97.    Plaintiff asserts that all of her related injuries, past, present, and future, are and will be a direct and proximate result of the negligent acts and/or omissions of Defendants, without any negligence, contribution, assumption of risk, or want of due care, on the part of Plaintiff.

WHEREFORE, Plaintiff Jane Doe CP, by and through her attorneys, Michael J. Belsky, Catherine A. Dickinson, Kellyn T. Wilcox, and Schlachman, Belsky, Weiner & Davey, P.A., demands judgment against Defendants Jehovah's Witnesses Governing Body, Kingdom Halls, Inc., Watchtower Bible and Tract Society of Pennsylvania, Watchtower Bible and Tract Society of New York, Inc., Watchtower Bible and Tract Society of Florida, Inc., and Christian Congregation of Jehovah's Witnesses, Inc., jointly and severally, for economic and non-economic damages in excess of the amount of Seventy-Five Thousand Dollars ($75,000.00) with interests and costs.

## COUNT IV – *RESPONDEAT SUPERIOR* (VICARIOUS LIABILITY)
*Plaintiff Jane Doe CP v. Defendants Kingdom Hall of Jehovah's Witnesses, Jehovah's Witnesses Governing Body, Kingdom Halls, Inc., Watchtower Bible and Tract Society of Pennsylvania, Watchtower Bible and Tract Society of New York, Inc., Watchtower Bible and Tract Society of Florida, Inc., and Christian Congregation of Jehovah's Witnesses, Inc.*

Plaintiff Jane Doe CP, by and through her attorneys, Michael J. Belsky, Catherine A. Dickinson, Kellyn T. Wilcox, and Schlachman, Belsky, Weiner & Davey, P.A., hereby sues Defendants Kingdom Hall of Jehovah's Witnesses, Jehovah's Witnesses Governing Body, Kingdom Halls, Inc., Watchtower Bible and Tract Society of Pennsylvania, Watchtower Bible and Tract Society of New York, Inc., Watchtower Bible and Tract Society of Florida, Inc., and

28

Christian Congregation of Jehovah's Witnesses, Inc., for vicarious liability, and incorporates paragraphs 1 through 97 above as if fully set forth herein, and further states as follows:

98.    At all times relevant hereto, Ingram and other unknown employees were acting as actual and/or apparent agents, servants and/or employees of Defendants.

99.    At all times relevant hereto, Defendants regularly engaged in business in Prince George's County, Maryland; specifically, the business of owning, managing and/or maintaining Jehovah's Witnesses Congregations, Including, but not limited to, the Kingdom Hall Congregation.

100.    As stated above, Defendants employed or otherwise retained staff to operate and maintain Jehovah's Witnesses congregations, including, but not limited to, Kingdom Hall Congregation, and to interact with members of same. At all times relevant to the incidents alleged, Ingram, and other unknown employees were acting within the scope of their actual and/or apparent agency and/or employment with Defendants, and/or with the authority and brand of their respective positions within Defendants' organizations, endowed with the power of those titles by the Defendants.

101.    At the time of the incidents alleged herein, Defendants' actual and/or apparent agents, servants and/or employees owed Plaintiff the various duties outlined, *supra*, which are incorporated by reference herein.

102.    Defendants' actual and/or apparent agents, servants and/or employees repeatedly and systematically breached their duties owed to Plaintiff and minor children, in the manner outlined *supra*, and were otherwise careless, reckless, and/or negligent in their acts and/or omissions.

29

103.    As a direct and proximate result of the negligent actions and/or omissions of Defendants' actual and/or apparent agents, servants and/or employees, Plaintiff was caused to suffer serious physical, emotional, and psychological injuries, including, but not limited to, anxiety, depression, post-traumatic stress disorder, and other significant injuries, all of which are permanent.

104.    As a direct and proximate result of the negligent actions and/or omissions of Defendants' actual and/or apparent agents, servants and/or employees, Plaintiff was caused to pay, or became obligated to pay, great sums of money for care and treatment of her injuries, and will continue to incur such expenses from time to time in the future and may become unwilling or unable to pay in the future.

105.    As a direct and proximate result of the negligent actions and/or omissions of Defendants' actual and/or apparent agents, servants and/or employees, Plaintiff was caused to pay, or became obligated to pay, great sums of money for care and treatment of her injuries, and will continue to incur such expenses from time to time in the future and may become unwilling or unable to pay in the future.

106.    Plaintiff asserts that all of her related injuries, past, present, and future, are and will be a direct and proximate result of the negligent acts and/or omissions of Defendants' actual and/or apparent agents, servants and/or employees, without any negligence, contribution, assumption of risk, or want of due care, on the part of Plaintiff.

WHEREFORE, Plaintiff Jane Doe CP, by and through his attorneys, Michael J. Belsky, Catherine A. Dickinson, Kellyn T. Wilcox, and Schlachman, Belsky, Weiner & Davey, P.A., demands judgment against Defendants Jehovah's Witnesses Governing Body, Kingdom Halls, Inc., Watchtower Bible and Tract Society of Pennsylvania, Watchtower Bible and Tract Society

of New York, Inc., Watchtower Bible and Tract Society of Florida, Inc., and Christian

Congregation of Jehovah's Witnesses, Inc., jointly and severally, for economic and non-economic

damages in excess of the amount of Seventy-Five Thousand Dollars ($75,000.00) with interests

and costs.

Respectfully submitted,

/s/ *Catherine A. Dickinson*
Michael J. Belsky, Esq. (AIS# 9512120047)
Catherine A. Dickinson, Esq. (AIS# 1212130142)
Kellyn T. Wilcox, Esq. (AIS# 2012180192)
Schlachman, Belsky, Weiner & Davey, P.A.
300 East Lombard Street, Suite 1100
Baltimore, Maryland 21202
P: (410) 685-2022
F: (410) 783-4771
mbelsky@sbwdlaw.com
cdickinson@sbwdlaw.com
kwilcox@sbwdlaw.com
*Attorneys for Plaintiff*

31

E-FILED; Prince George's Circuit Court
Docket: 5/21/2025 3:54 PM; Submission: 5/21/2025 3:54 PM
Envelope: 21304389

| | | |
|---|---|---|
| JANE DOE CP | * | IN THE |
| c/o SBWD LAW | | RS |
| 300 East Lombard Street, Suite 1100 | * | CIRCUIT COURT |
| Baltimore, Maryland 21202 | | |
| | * | FOR |
| Plaintiff | | |
| | * | PRINCE GEORGE'S COUNTY, |
| vs. | | |
| | * | MARYLAND |
| JEHOVAH'S WITNESSES | | |
| GOVERNING BODY | * | |
| 1 Kings Drive | | |
| Warwick, New York 10987 | * | CASE NO.  C-16-CV-25-002783 |
| | | |
| and | * | |
| | | |
| KINGDOM HALL OF JEHOVAH'S | * | |
| WITNESSES | | |
| 420 Rollins Avenue | * | |
| Capitol Heights, Maryland 20743 | | |
| | * | |
| and | | |
| | * | |
| KINGDOM HALLS, INC. | | |
| 4002 Ridgewood Avenue | * | |
| Baltimore, Maryland 21215 | | |
| | * | |
| Serve on:    Bennie L. Bivens | | |
|                   2302 Koko Lane | * | |
|                   Baltimore, Maryland 21216 | | |
| | * | |
| and | | |
| | * | |
| WATCHTOWER BIBLE AND TRACT | | |
| SOCIETY OF PENNSYLVANIA | * | |
| 625 Red Mills Road | | |
| Wallkill, New York 12589 | * | |
| | | |
| and | * | |
| | | |
| WATCHTOWER BIBLE AND TRACT | * | |
| SOCIETY OF NEW YORK, INC. | | |
| 100 Watchtower Drive | * | |
| Patterson, New York 12563 | | |
| | * | |

1

Serve on:    Watchtower Bible and Tract
                 Society of New York, Inc.   *
                 ATTN: Legal
                 100 Watchtower Drive   *
                 Patterson, New York 12563

                                          *

and

                                        *

WATCHTOWER BIBLE AND TRACT
SOCIETY OF FLORIDA, INC.             *
100 Watchtower Drive
Patterson, New York 12563        *

Serve on:    Watchtower Bible and Tract *
                 Society of Florida, Inc.
                 ATTN: Legal              *
                 100 Watchtower Drive
                 Patterson, New York 12563   *

and                                          *

CHRISTIAN CONGREGATION OF    *
JEHOVAH'S WITNESSES, INC.
675 Red Mills Road                *
Wallkill, New York 12589

                                        *

Serve on:    Christian Congregation of
                 Jehovah's Witnesses        *
                 ATTN: Legal
                 675 Red Mills Road      *
                 Wallkill, New York

                                        *

      *Defendants*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## DEMAND FOR JURY TRIAL

Pursuant to Maryland Rule 2-325, Plaintiff hereby respectfully demands a trial by jury of the above-captioned case.

Respectfully submitted,

_/s/  Catherine A. Dickinson_
Michael J. Belsky, Esq. (AIS# 9512120047)
Catherine A. Dickinson, Esq. (AIS# 1212130142)
Kellyn T. Wilcox, Esq. (AIS# 2012180192)
Schlachman, Belsky, Weiner & Davey, P.A.
300 East Lombard Street, Suite 1100
Baltimore, Maryland 21202
P: (410) 685-2022
F: (410) 783-4771
mbelsky@sbwdlaw.com
cdickinson@sbwdlaw.com
kwilcox@sbwdlaw.com
*Attorneys for Plaintiff*

3